IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:16-cv-00084-RLV-DSC

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ROBERT T. SOFIELD, JR.,DEBORAH C. ) <br> SOFIELD, and SOFIELD CHILDREN'S ) <br> LIMITED PARTNERSHIP, ) <br> ) <br> Defendants. ) <br> _____ ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendants Robert T. Sofield, Jr., Deborah C. Sofield, and Sofield Children's Limited Partnership's (collectively the "Sofield Parties" or "Defendants") Motion to Dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. (Doc. 13). Plaintiff U.S. Bank National Association ("U.S. Bank") filed a Memorandum in Opposition to Defendants' Motion to Dismiss, (Doc. 14), and Defendants filed a Reply in Support of Their Motion to Dismiss, (Doc. 17). For the reasons stated below, Defendants' Motion to Dismiss, (Doc. 13), is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**.

I.  BACKGROUND

In 2013, the Sofield Parties sold their equity interests in certain companies to Justrite Manufacturing Company, LLC ("Justrite") pursuant to a Purchase Agreement ("Purchase Agreement"). (Doc 1 at 3). To secure the Sofield Parties' obligations under the Purchase Agreement, Justrite and the Sofield Parties enlisted U.S. Bank to hold a portion of the purchase price in escrow and release funds over the eighteen-month period following closing so long as

1

specified objective criterion were satisfied. *Id.*[1] The Sofield Parties, Justrite, and U.S. Bank signed an Escrow Agreement ("Escrow Agreement"), (*see* Doc. 1-1),[2] and Justrite transferred to U.S. Bank $1.5 million of the purchase price to hold as security for the Sofield Parties' obligations under the Purchase Agreement, (Doc. 1 at 3). The Escrow Agreement required U.S. Bank to disburse to the Sofield Parties $750,000.00 of the escrowed funds, less any "Disputed Amount," on the second business day after the twelve-month anniversary of the closing date. *Id.*; (*see also* Doc. 1-1 at 5-6). A second disbursement, consisting of the remaining $750,000.00 of the escrowed funds less any Disputed Amounts, was to be released to the Sofield Parties on the second business day after the eighteen-month anniversary of the closing date. (Doc. 1 at 3; *see also* Doc. 1-1 at 4, 6).

Under the Escrow Agreement, if Justrite believed that it had a claim for indemnification under the Purchase Agreement during the eighteen-month period after the closing date, Justrite, to protect its interest in the funds in escrow, needed to promptly deliver a written "Indemnification Request" to the Sofield Parties and a "Pending Claim Notice" to the Sofield Parties and to U.S. Bank. (Doc. 1 at 3; *see also* Doc. 1-1 at 4-5). In its Pending Claim Notice, Justrite was required to set forth the "Claimed Amount"–i.e., the amount of money as to which it claimed indemnification. (Doc. 1 at 3; *see also* Doc. 1-1 at 4). Within a thirty-day "Objection Period" that followed the receipt of a Pending Claim Notice, the Escrow Agreement required the Sofield Parties to deliver to U.S. Bank and to Justrite a written response either agreeing that Justrite was entitled to the Claimed Amount or disputing that Justrite was entitled to all or a portion of the Claimed

---

[1] The Purchase Agreement is dated September 12, 2013. (*See* Doc. 1 at 3).
[2] In assessing the legal sufficiency of a claim under Fed. R. Civ. P. 12(b)(6), a court may rely on documents that are "integral to and explicitly relied on in the complaint" so long as the non-moving party does not challenge the documents' authenticity. *Phillips v. LCI, Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). The contents of the documents attached to U.S. Bank's complaint are relied on in the complaint and neither party to this action challenges the authenticity of any of the documents.

Amount, thus establishing the "Disputed Amount." (Doc. 1 at 3; *see also* Doc. 1-1 at 4). If the Sofield Parties disputed the Claimed Amount, then the Escrow Agreement required U.S. Bank to release any amount that was not disputed and, further, required the Sofield Parties and Justrite to resolve the dispute, either through negotiations culminating in a "Joint Letter of Direction" to U.S. Bank or by obtaining a court order regarding the proper disbursement of the Disputed Amount. (Doc. 1 at 4; *see also* Doc. 1-1 at 4-5).

At the twelve-month anniversary of the Purchase Agreement, U.S. Bank disbursed $750,000.00 of the escrowed funds to the Sofield Parties. (Doc. 13-1 at 4). The eighteen-month anniversary of the Purchase Agreement closing date was March 12, 2015. (*See* Doc. 1 at 3 (noting closing date of Purchase Agreement of September 12, 2013). On March 9, 2015, Justrite sent a "Notice of Indemnification Claim" to the Sofield Parties, asserting a claim for breach of representations and warranties under the Purchase Agreement. (Doc. 1 at 4; *see* Doc. 1-2). Justrite also submitted a Pending Claim Notice to U.S. Bank, requesting that U.S. Bank not disburse any of the escrow funds because Justrite could not yet quantify the claim amount. (Doc. 1 at 4; *see* Doc. 1-3).

Notwithstanding the notices sent by Justrite, U.S. Bank, on April 28, 2015, disbursed the remaining escrow funds to the Sofield Parties. (Doc. 1 at 5). Specifically, U.S. Bank issued three checks to the Sofield Parties totaling $750,561.91, which represented the remainder of the escrow funds. *Id.*; (*see also* Doc. 1-4 at 2).[3] U.S. Bank asserts that the April 28, 2015 disbursement was "inadvertent[]" and that the disbursement was done "mistakenly" and was an "error." (Doc. 1 at 2, 5). Subsequently, U.S. Bank demanded the Sofield Parties return the funds, *Id.* at 5; (*see also*

---

[3] Although the record does not provide a definitive explanation as to why the remainder of the escrow funds was $750,561.91 rather than $750,000.00, it was presumably the result of interest accumulated while the escrow funds were held by U.S. Bank. Regardless, U.S. Bank's complaint seeks only the subsequently quantified disputed amount and does not seek a proportional share of the interest. (*See* Doc. 1 at 8).

3

Doc. 1-4 at 2), but the Sofield Parties declined to do so because they did not believe Justrite had a valid claim, (Doc. 1 at 5; *see also* Doc. 1-5). On November 5, 2015, Justrite served on the Sofield Parties and U.S. Bank an updated claim quantifying the amount of the claim as being $604,000.00 ("Disputed Funds"). (Doc. 1 at 5; *see also* Doc. 1-6). On November 10, 2015, U.S. Bank served a second demand on the Sofield Parties, seeking return of the Disputed Funds. (Doc. 1 at 5; *see also* Doc. 1-7). The Sofield Parties again declined to return any of the money from the second disbursement because they did not believe Justrite had a valid claim. (Doc. 1 at 5; *see also* Doc. 1-8).

U.S. Bank's complaint against the Sofield Parties contains three claims: (1) conversion ("Count One"); (2) unjust enrichment ("Count Two"); and (3) a request for a declaratory judgment with respect to U.S. Bank's and the Sofield Parties' rights to possess the Disputed Funds ("Count Three"). (Doc. 1 at 6-7). Justrite is not a party to this action. The Sofield Parties filed a motion to dismiss seeking to dismiss all three claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and seeking to dismiss the action under Fed. R. Civ. P. 12(b)(7) for failure to join a party under Fed. R. Civ. P. 19. (Doc. 13). In support of the Rule 12(b)(6) aspect of their motion to dismiss, the Sofield Parties argue that: (1) the conversion claim should be dismissed because U.S. Bank, as escrow agent, has no ownership interest in the allegedly converted funds, (Doc. 13-1 at 12); (2) the unjust enrichment claim is barred by an express contract governing the relationship between U.S. Bank and the Sofield Parties, *id* at 12-13; and (3) the declaratory judgment claim is invalid because there is no "actual controversy" between U.S. Bank and the Sofield Parties, *id* at 13-14. In response, U.S. Bank contends that: (1) the conversion claim survives because it has an interest in "restor[ing] and preserv[ing] the status quo until ownership of the disputed funds can be determined," (Doc. 14 at 2, 7-8); (2) the unjust enrichment claim

4

should survive because it "may plead equitable claims in the alternative," *id.* at 8-10; and (3) it may sustain its declaratory judgment claim because there is a "live, concrete" dispute between U.S. Bank and the Sofield Parties in that the Sofield Parties are in possession of the Disputed Funds and U.S. Bank is entitled to immediate possession of them, *id* at 10-11. In support of their Rule 12(b)(7) basis for dismissal, the Sofield Parties contend that Justrite is a necessary and indispensable party under Rule 19 because the Court will need to interpret both the Escrow Agreement and the Purchase Agreement to render a judgment, and because any judgment by the Court would likely subject the Sofield Parties to conflicting legal obligations. (Doc. 13-1 at 8-12; Doc. 17 at 1-4). In response, U.S. Bank contends that Justrite is not a necessary or indispensable party because this Court can afford U.S. Bank complete relief on its claims without interpreting the Purchase Agreement and without determining Justrite's entitlement to the "Disputed Funds." (Doc. 14 at 4-6).

## II. DISCUSSION

### A. <u>Jurisdiction</u>

This Court's jurisdiction is properly based on 28 U.S.C. § 1332(a). Specifically, U.S. Bank is a citizen of Minnesota and Ohio for purposes of diversity jurisdiction, and the Sofield Parties are residents of North Carolina.[4] (Doc. 1 at 2). In addition, U.S. Bank's complaint, which seeks the return of the Disputed Funds, satisfies the amount in controversy requirement of § 1332(a). *See id.* at 8 .

---

[4] The parties do not provided the Court with sufficient documentation or allegations for the Court to determine the full extent of Justrite's citizenship for the purposes of diversity jurisdiction but the Court notes that Justrite, at the time of the Purchase Agreement, was incorporated in Delaware. (*See* Doc 13-2 at 6).

B.     Fed. R. Civ. P. 12(b)(6) Failure to State a Claim

Rule 12(b) of the Federal Rules of Civil Procedure provides for the dismissal of a claim based upon a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss, a court must construe the complaint's factual allegations "in the light most favorable to the plaintiff" and "must accept as true all well-pleaded allegations." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court, however, "'need not accept the legal conclusions drawn from the facts,'" nor "'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

While Rule 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage," *id.* at 556, but does demand more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Ultimately, a claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

i.     *Conversion Claim*

In support of their Motion to Dismiss U.S. Bank's conversion claim, the Sofield Parties argue that U.S. Bank does not state a valid claim because, as an escrow agent, it has no ownership

interest in the allegedly converted Disputed Funds. (Doc. 13-1 at 12). In response, U.S. Bank acknowledges that it "isn't the beneficial owner of the disputed funds," and that it "has no stake in who ultimately is entitled to the funds." (Doc. 14 at 2). However, U.S. Bank contends that it has an interest in "restor[ing] and preserv[ing] the status quo until ownership of the disputed funds can be determined in whatever manner the Sofield Parties and Justrite pursue." (Doc. 14 at 2). The issue, then, is whether an escrow agent may bring a conversion clam against a party to an escrow agreement when the agent erroneously distributed the escrow funds to the party, the agent demanded return of the funds, and the party in receipt of the funds refused said demand.

In their briefs, both parties present arguments rooted in North Carolina law; however, this Court takes notice that the Escrow Agreement's Governing Law provision states that "[t]his Agreement shall be governed by and construed in accordance with the internal laws of Delaware[.]" (Doc. 1-1 at 12). Therefore, at this juncture, this Court **DEFERS ACTION** on the Sofield Parties' Motion to Dismiss with respect to U.S. Bank's Count One conversion claim. The parties are, hereby, **ORDERED** to file supplemental briefs that address (1) whether the Governing Law provision applies to a conversion claim arising from the disbursement of the funds that were maintained by U.S. Bank pursuant to the Escrow Agreement; and (2) if the Governing Law provision applies, whether the conversion claim is viable under Delaware law. The Sofield Parties shall have up to and including June 28, 2017 to file their supplemental brief. U.S. Bank shall have up to and including July 5, 2017 to file its supplemental brief.

  ii. *Unjust Enrichment Claim*

In support of their Motion to Dismiss U.S. Bank's unjust enrichment claim, the Sofield Parties argue that, since there was an express contract governing the relationship between U.S.

7

Bank and the Sofield Parties, the unjust enrichment claim is barred.[5] (Doc. 13-1 at 13). Unjust enrichment is "a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988); *see also Trincia v. Testardi*, 57 A.2d 638, 642 (Del. Ch. 1948). In order to establish a claim for unjust enrichment,

> a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is, it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

*Booe*, 369 S.E.2d at 556; *see also Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062-63 (Del. 1988) (defining "unjust enrichment"). An implied contract and an express contract cannot co-exist and a party is unable to simultaneously collect damages on a breach of contract claim and an unjust enrichment claim. *Hall v. Mabe*, 336 S.E.2d 427, 429 (N.C. Ct. App. 1985); *see also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009). Thus, where there is an enforceable express contract between the parties, "the contract governs the claim and the law will not imply a contract." *Booe*, 369 S.E.2d at 556; *Kuroda*, 971 A.2d at 891 ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim. In other words, if the contract is the measure of [the Plaintiff's] right, there can be no recovery under an unjust enrichment theory independent of it." (internal quotation marks omitted)).

Here, U.S. Bank argues that it "may plead equitable claims in the alternative" under Fed. R. Civ. P. 8(a)(3). (Doc. 14 at 9). However, this line of reasoning is flawed for two reasons. First,

---

[5] The Sofield Parties also argue that (1) U.S. Bank failed to state a valid claim because the Bank, as escrow agent, "did not distribute any 'benefit' that it owned and for which it could be entitled to compensation"; and (2) U.S. Bank acted officiously when it distributed the remaining escrow funds, which the Sofield Parties did not solicit. (Doc. 13-1 at 13). Because the Sofield Parties argument about the existence of an express contract is dispositive as to the viability of U.S. Bank's unjust enrichment claim, the Court finds it unnecessary to address the Sofield Parties' additional arguments.

8

U.S. Bank did not raise a breach of contract claim in the alternative to its equitable claims. (*See* Doc. 1 at 6-7). Second, although a plaintiff may allege alternative theories of recovery, "[t]he ability of a party to raise an unjust enrichment claim in the alternative to a breach of contract claim . . . rests on the absence of evidence establishing the existence of an express contract." *Niloy, Inc. v. Lowe's Cos., Inc.*, 2017 WL 29338, at *8 (W.D.N.C. Jan. 3, 2017) (Voorhees, J.). Here, U.S. Bank attaches the Escrow Agreement to its own complaint and relies on provisions of the Escrow Agreement in support of its contention that the Sofield Parties were not entitled to the second disbursement. *Cf. Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006) ("When the complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed.").

U.S. Bank argues that it should be permitted to maintain its unjust enrichment claims because, in the event the Escrow Agreement terminated once it made the second disbursement, there is no longer a valid contract between U.S. Bank and the Sofield Parties. (Doc. 14 at 9-10). The Escrow Agreement states that it "shall terminate on the first to occur of (a) the disbursement of the entire amount of the Escrow Funds *in accordance with the terms hereof* or (b) a mutual consent signed by Purchaser and the Sellers' Representative." (Doc. 1-1 at 6) (emphasis added). Indeed, the crux of U.S. Bank's argument is that the Disputed Funds were erroneously disbursed to the Sofield Parties because the Escrow Agreement required that U.S. Bank retain possession over the funds in light of Justrite delivering an Indemnification Request and a Pending Claim Notice before the eighteen-month anniversary of the Purchase Agreement closing date. To that point, absent a breach of the Escrow Agreement, wherein the Sofield Parties received the funds but the disbursement was not in accord with the terms of the Escrow Agreement, there is no allegation in U.S. Bank's Complaint to support a contention that the Sofield Parties' retention of

the Disputed Funds is unjust. Accordingly, under the theory advanced by U.S. Bank, U.S. Bank's right to the return of the Disputed Funds clearly stems from the Escrow Agreement, an express contract. Therefore, the Sofield Parties' Motion to Dismiss is **GRANTED** with respect to their Fed. R. Civ. P. 12(b)(6) argument as to U.S. Bank's Count Two claim for unjust enrichment.

        iii.     *Declaratory Judgment Claim*

In its complaint, U.S. Bank seeks a judicial determination of the respective rights and duties of the parties under the Escrow Agreement relative to the Disputed Funds. (*See* Doc. 1 at 7). Specifically, U.S. Bank seeks a declaration by this Court that the Sofield Parties have no right to retain the Disputed Funds and that the Sofield Parties must return the funds to the escrow account overseen by U.S. Bank. *Id*. Although U.S. Bank does not term any of its actions as a claim for a breach of contract, the declaratory judgment claim has aspects akin to a breach of contract action in that the claim essentially asks this Court to determine whether the Escrow Agreement requires that the Sofield Parties return the Disputed Funds to the escrow account.

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A district court may exercise jurisdiction over a declaratory judgment action when three "essentials" are met:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004). Here, the second requirement is satisfied because there is diversity between U.S. Bank and the Sofield Parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1); *see also City*

*of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983) ("To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit."). The issue, then, is whether there is an actual controversy between U.S. Bank and the Sofield Parties and, if so, whether it is within this Court's discretion to exercise jurisdiction over the claim.

The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). In determining whether to entertain a request for declaratory relief, district courts should consider whether such a request "'will serve a useful purpose in clarifying and settling the legal relations in issue,' and 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Volvo Constr. Equip. N. Am., Inc.,* 386 F.3d at 594 (quoting *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir. 1937)). Indeed, a declaratory judgment action must satisfy the case or controversy requirement of Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).

To satisfy the Article III requirement, a declaratory judgment action must present a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127 (internal quotation marks omitted). It must be a "real and substantial" controversy, admitting of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Aetna Life Ins. Co.*, 300 U.S. at 241). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Hogs & Heroes*

*Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 494 (D. Md. 2016) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Therefore, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co.*, 312 U.S. at 273). The rights of a party under a contract, even a contract that has terminated, may provide the basis for an actual controversy where the rights of a party are "hotly contested" and a remedy is available should the Court determine that a party has been deprived of a right guaranteed under the contract. *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1303 (M.D. Fla. 2015); *see also NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

The circumstances of the present case, as alleged by U.S. Bank, support the conclusion that there is a substantial controversy and that the parties have adverse legal interests. The controversy giving rise to this proceeding is the disbursement of the Disputed Funds under the Escrow Agreement and U.S. Bank's contention that the Sofield Parties are obliged to return the Disputed Funds to the escrow account because they knew of the ongoing claim dispute by Justrite. In part, the Sofield Parties contend that the Indemnification Request and the Pending Claim Notice submitted by Justrite before the second disbursement by U.S. Bank did not comply with the terms of the Escrow Agreement and was ineffective to stop the second disbursement such that their receipt and retention of the second distribution, or any subsequently specified portion of the second disbursement, did not violate the Escrow Agreement. The issuance of a declaratory judgment will clarify and settle the legal relationship and rights as between U.S. Bank and the Sofield Parties. Notably, a declaratory judgment in favor of U.S. Bank would (1) restore the status quo prior to the

second disbursement, (2) shield U.S. Bank from any future litigation matters stemming from the transaction between Justrite and the Sofield Parties, and (3) clear the stage for resolution of any claims between Justrite and the Sofield Parties. On the other hand, a declaratory judgment in favor of the Sofield Parties would conclusively establish that the legal relationship between the Sofield Parties and U.S. Bank has terminated and would set the stage for Justrite to decide whether it wishes to pursue a separate action against the Sofield Parties, U.S. Bank, or both. In sum, while a declaratory judgment will not provide total certainty or finality as to all matters arising from the relationship between Justrite, the Sofield Parties, and U.S. Bank, it will clarify and settle the legal relationship between U.S. Bank and the Sofield Parties while helping set the stage for resolution regarding the proper fate of the Disputed Funds. Accordingly, the Sofield Parties' Motion to Dismiss is **DENIED** with respect to their Fed. R. Civ. P. 12(b)(6) argument as to U.S. Bank's Count Three claim for a declaratory judgment.

        C.      <u>Fed. R. Civ. P. 19 Joinder of Necessary and Indispensable Party</u>

To prevent a plaintiff from sidestepping the complete diversity requirement of 28 U.S.C. § 1332(a), Fed. R. Civ. P. 19 requires the dismissal of an action brought in diversity jurisdiction if a nondiverse, nonjoined party is "necessary" and "indispensable" to the litigation. *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014). In deciding whether an action must be dismissed, "Rule 19 is not to be applied as a procedural formula." *Id.* (internal quotation marks omitted). Instead, "[d]ecisions must be made pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." *Id.* (internal quotation marks and citation omitted). Furthermore, dismissal for a Rule 19 defect is disfavored as "[c]ourts are loath to dismiss cases based on nonjoinder of a party." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). Accordingly, "dismissal will be

13

ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will *certainly* result." *Id.* (emphasis added).

"To determine whether a party should be joined, Rule 19 of the Federal Rules of Civil Procedure sets forth a two-step inquiry, examining: (1) whether the party is 'necessary' to the action under Rule 19(a); and (2) whether the party is 'indispensable' under Rule 19(b)." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). The burden is on the party raising the Rule 19 argument "to 'show that the [party] who was not joined is needed for a just adjudication.'" *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1609 (3d ed. 2001)). If a party is "necessary" under Rule 19(a), the party will be "ordered into the action." *Owens-Illinois*, 186 F.3d at 440; *see also* Fed. R. Civ. P. 19(a)(2). Only after determining that a "necessary" party ordered into an action would defeat a court's jurisdiction over the action must a court determine whether the "necessary" party is also "indispensable" such that a failure to join the party requires dismissal of the action. *See Owens-Illinois*, 186 F.3d at 440.

As Rule 19(a)(1) is disjunctive in nature, a party is necessary if Rule 19(a)(1)(A), (B)(i), or (B)(ii) is satisfied. *See Home Buyers Warranty Corp.*, 750 F.3d at 433-34. In their reply brief, the Sofield parties disavow any reliance on Rule 19(a)(1)(B)(i) as a basis for compelling the joinder of Justrite. (*See* Doc. 17 at 1). Accordingly, the Court will only consider whether Justrite is a necessary party under Rule 19(a)(1)(A) and Rule 19(a)(1)(B)(ii). Under Rule 19(a)(1)(A), a party is "necessary" if "in that [party's] absence, the court cannot accord complete relief among existing parties." (Emphasis added). "'Complete relief' is any relief that 'will effectively and completely adjudicate the dispute." *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 518 (M.D.N.C. 2008) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure § 1604 (3d ed. 2001)). The phrase "complete relief" has also been interpreted to include the ability to present and advance relevant defenses to the claims on which the plaintiff seeks relief although the majority of courts do not require joinder where joinder is only necessary to the presentation of a defense. *See id.* (collecting cases).

At this juncture, the Sofield Parties have not sustained their burden of demonstrating that the Court could not afford the existing parties complete relief absent Justrite's joinder. The existing parties are U.S. Bank and the Sofield Parties and the matter before the Court boils down to whether the Sofield Parties must return the Disputed Funds to the escrow account that was formed under the Escrow Agreement and overseen by U.S. Bank. To determine whether the Disputed Funds must be returned to the escrow account, the Court will likely need to interpret the Escrow Agreement and determine whether Justrite's Indemnification Request and Pending Claim Notice satisfied the notice provisions in the Escrow Agreement. The Court may also need to determine whether U.S. Bank inadvertently or mistakenly made the second disbursement of funds to the Sofield parties.[6] If the Court, or a jury, answers both questions in the affirmative, a judgment would be entered in favor of U.S. Bank and the Sofield Parties would be required to return the Disputed Funds to the escrow account. Under this result, U.S. Bank would receive all the relief it seeks. The Sofield Parties, meanwhile, would not be entitled to any relief because the Escrow Agreement would command that the money should be in U.S. Bank's possession. If, on the other hand, the Court, or a jury, answers one or both questions in the negative, a judgment would be

---

[6] Contrary to the Sofield Parties' argument, while the Purchase Agreement provides some context for the relationship between U.S. Bank and the Sofield Parties, the Court sees no reason, at this juncture, why it would need to interpret any provision in the Purchase Agreement when determining the questions essential to the claims raised by U.S. Bank. First, U.S. Bank is not a party to the Purchase Agreement. Second, the Sofield Parties' argument about the Purchase Agreement appears to only relate to one of the defenses the Sofield Parties seek to raise—that Justrite's claim for breach of representations and warranties is without merit. This potential defense does not appear particularly relevant to the claims raised in U.S. Bank's complaint given that U.S. Bank's claims focus on whether a procedural breach of the Escrow Agreement occurred because the Sofield Parties and U.S. Bank received proper notice of Justrite's claims but U.S. Bank, nonetheless, made the second disbursement of funds.

entered in favor of the Sofield Parties. Under this result, U.S. Bank would not be entitled to any relief and the Sofield Parties would retain possession of the Disputed Funds, which is the fullest relief the Sofield Parties can attain on the claims actually before this Court. Accordingly, at this juncture, the Sofield Parties have not demonstrated why the Court could not afford the parties to this litigation complete relief as to the claims and issues actually raised in U.S. Bank's complaint and have not sustained their burden of showing that Justrite is a necessary party under Fed. R. Civ. P. 19(a)(1)(A).

Unlike the requirement for joinder in Rule 19(a)(1)(A) that focuses on the impact of nonjoinder on the parties to the action, the two requirements for joinder in Rule 19(a)(1)(B) focus on the impact of nonjoinder on the nonjoined party. *Pettiford*, 556 F. Supp. 2d at 517. Under Rule 19(a)(1)(B)(ii), joinder of a party is required if the nonjoined party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may . . . leave an existing party subject to *a substantial* risk of incurring double, multiple, or otherwise inconsistent *obligations* because of the interest." (emphasis added). The Sofield Parties argue that, regardless of the outcome in the pending action brought by U.S. Bank, a subsequent litigation between Justrite and the Sofield Parties is likely because the present action will not bind Justrite as to its claim for breach of representations and warranties.

Assuming that a future litigation between Justrite and the Sofield Parties is likely, the mere likelihood of the future litigation is not sufficient to satisfy Rule 19(a)(1)(B)(ii)'s standard for requiring joinder. "The law . . . is clear that the mere possibility of facing multiple *litigations* is not the same as multiple *obligations*." *Woodard v. Woodard Villa, Inc.*, 2016 WL 1298995, at *4 (W.D. La. Mar. 31, 2016) (citing *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1305 (5th Cir. 1989)); *see also Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 533 (W.D. Tenn. 2015)

("[W]hether a party faces the possibility of multiple actions—and potentially even logically inconsistent judgments—is irrelevant if the party is not at risk of inconsistent obligations."). This is because "Rule 19(a)(1)(B)(ii) is not concerned with multiple litigations" but is, instead, focused on "the risk that the defendant will be forced to pay twice or more for the same alleged misconduct, or face inconsistent obligations from two courts, where performance of one obligation may cause the breach of another obligation." *Woodard*, 2016 WL 1298995, at *4 (citing *Pulitzer-Polster*, 784 F.2d at 1317; *Delagado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)).

As discussed earlier within the context of Rule 19(a)(1)(A), this case is likely to be resolved in one of two ways—the Sofield Parties are ordered to return the Disputed Funds to the escrow account or the Sofield Parties retain the Disputed Funds. Under the first possible result, this Court's order will place an obligation on the Sofield Parties; however, any future litigation between Justrite and the Sofield Parties is unlikely to place any further obligation on the Sofield Parties because, even if the Sofield Parties lose the subsequent litigation, the Disputed Funds would not be in their possession and any judgment in favor of Justrite can easily be satisfied by U.S. Bank transferring the Disputed Funds in the escrow account to Justrite. *See Delgado*, 139 F.3d at 3 ("[W]here two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages."). To that point, if the Disputed Funds are returned to the escrow account, the Escrow Agreement requires the Sofield Parties and Justrite to resolve their dispute through negotiations culminating in a "Joint Letter of Direction" to U.S. Bank or through a civil action resulting in a court order directing U.S. Bank "as to the proper distribution of the Disputed Amounts." (Doc. 1-1 at 5). If, on the other hand, the second possible result occurs and this Court's order permits the Sofield Parties to retain the Disputed Funds, this Court's order

places no obligation on the Sofield Parties such that any obligation placed on the Sofield Parties by a future litigation cannot, by definition, be "double, multiple, or otherwise inconsistent." *See Delgado*, 139 F.3d at 3. ("[A] risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident . . . does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a)."); *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457 (M.D.N.C. 1995) (noting, within context of Rule 19(a), that "[t]he mere risk that a defendant who has successfully defended against a party may be found liable to another plaintiff in a subsequent action does not necessitate joinder of all of the parties in one action"). Given the nature of the declaratory judgment claim that survives Defendants' Motion to Dismiss and the possible remedy available to U.S. Bank if it prevails on that claim, the specific facts and circumstances of this case render it highly unlikely, if not impossible, for the Sofield Parties to be faced with double, multiple, or inconsistent obligations even if this action proceeds without Justrite and Justrite files a future action against the Sofield Parties. Therefore, the Sofield Parties have not sustained their burden of demonstrating that Justrite is a necessary party under Fed. R. Civ. P. 19(a)(2)(B)(ii) and the Sofield Parties' Motion to Dismiss is **DENIED** with respect to their Fed. R. Civ. P. 12(b)(7) argument.[7]

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT** Defendants' Motion to Dismiss (Doc. 13) is **GRANTED IN PART, DENIED IN PART**, and **DEFERRED IN PART**. Specifically, the Motion to Dismiss is:

---

[7] The denial is without prejudice to the Sofield Parties renewing their Rule 12(b)(7) argument at a subsequent stage in this proceeding if facts, learned through discovery, materially alter this Court's Fed. R. Civ. P. 19 analysis. *See* Fed. R. Civ. P. 12(h)(2)(B), (C); *see also* Fed. R. Civ. P. 12(c). If the Sofield Parties renew their Rule 12(b)(7) argument, the memorandum in support of any motion containing their Rule 12(b)(7) motion shall address whether Justrite can be joined to this action without defeating this court's jurisdiction over the action or, if the action must be transferred following Justrite's joinder, the receiving federal court's jurisdiction over the action.

(1) **GRANTED** as to Defendants' Fed. R. Civ. P. 12(b)(6) argument with respect to Plaintiff's Count Two unjust enrichment claim and Count Two of Plaintiff's complaint is **DISMISSED WITH PREJUDICE**;

(2) **DENIED** as to Defendants' Fed. R. Civ. P. 12(b)(6) argument with respect to Plaintiff's Count Three claim for a declaratory judgment;

(3) **DENIED** as to Defendants' Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 argument with respect to Plaintiff's action as a whole; and

(4) **DEFERRED** as to Defendants' Fed. R. Civ. P 12(b)(6) argument with respect to Plaintiff's Count One conversion claim.

**IT IS FURTHER ORDERED** that the Sofield Parties shall have up to and including June 28, 2017 to file their supplemental brief and that U.S. Bank shall have up to and including July 5, 2017 to file its supplemental brief.

Signed: June 13, 2017

Richard L. Voorhees
United States District Judge